DOLORES PÉREZ MARCHAND, Petitioner and Appellant, v. EDUARDO GARRIDO MORALES, COMMISSIONER OF HEALTH, Respondent and Appellee.

No. 6877. Argued February 14, 1935.—Decided May 7, 1935.

*Alberto S. Poventud* for appellant. *Benjamín J. Horton, Attorney General,* and *T. Torres Pérez, Deputy Attorney General,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is a proceeding in mandamus brought by Doctor Pérez Marchand against the Commissioner of Health Garrido Morales, and the petition contains two causes of action.

As a basis for the first cause of action, on the strength of which the petitioner asks that the respondent be ordered to restore her immediately to her office as Tocologist of the District Hospital of Ponce, she alleges substantially that she was appointed on May 1, 1930, and that on October 25, 1933, she was discharging the duties of the said office, created by law, within the Classified Civil Service, when she received a letter from the respondent removing her, without charges having been preferred against her or an opportunity having been given her to be heard by the Civil Service Commission, the said removal being solely due to her refusal to send a certain monetary contribution for political purposes demanded of her by officers of the Department of Health.

As a basis for the second cause of action, on the strength of which she requests that the respondent be ordered to pay her the sum of $2,820 as damages, she alleges substantially that she had suffered damages amounting to $660 up to the date of the petition and that she would suffer $2,160 more during the year which she supposed the litigation would last, estimated on the basis of the salary which, according to law, she was entitled to receive, and which she had been receiving for the discharge of the duties of the office from which she had been illegally removed by the respondent.

An order to show cause was issued and the respondent appeared. He admitted the facts relative to the appointment and to the removal of the petitioner from the office of Tocologist of the District Hospital of Ponce, and denied that the said removal was made for the reason and in the manner stated, alleging in this respect, substantially, that he ordered the petitioner to do certain work and that the petitioner disregarded his order, that he preferred charges against her which she answered, and, since the answer was not satisfactory, he removed her, in conformity with the Civil Service Act. He denied that he had caused any damage for which he could be liable.

Upon the issue thus joined, the case went to trial, at which lengthy documentary and oral evidence was introduced. On September 10, 1934, the court rendered judgment denying the petition, without special imposition of costs, on the ground that the administrative remedy had not been exhausted. In its statement of the case and opinion, the court expressed itself partly as follows:

"Limiting, then, our decision to the first question raised by the petitioner in her petition, which we considered above, we find that written charges were preferred in this case and were answered by the plaintiff, and that the said charges (sic) being unsatisfactory to the Commissioner of Health, the latter removed the petitioner employee, but immediately sent the entire record to the Civil Service Commission, which, as far as the record shows, does not appear to have made any investigation of the matter for which reason we are of the opinion that the administrative remedy should be exhausted before resort is had to the courts."

Feeling aggrieved by that judgment the petitioner took the present appeal, and has assigned five errors committed, as she claims, by the district court (1) in holding that charges were preferred for her final removal, and (2) that she should have applied to the Civil Service Commission before resorting to court; (3) in failing to hold that the commission did not consent to her final removal, as required by law; (4) in not holding that her removal was due to her refusal to contribute to political funds; and (5) in failing to decide the claim for damages.

It seems advisable to refer to the documentary evidence of both parties in order to set out such facts as are necessary for the decision of the case, according to the opinion which we have formed of the same.

It is admitted that the petitioner had held the office of Tocologist of the District Hospital of Ponce for years; that she was properly appointed and that her office is within the Classified Civil Service.

On September 6, 1933, the respondent, in his capacity as Commissioner of Health, addressed to the petitioner, in her capacity as Tocologist, a letter which reads as follows:

"Re: Additional service.

"1. In accordance with the reorganization plan which is being carried out in this Department, you are hereby ordered to hold five weekly clinics in the Public Health Unit of Ponce; three for children and two for prenatals, in addition to the work which you do in the District Hospital of Ponce.

"2. You should begin this additional work on Monday, the 11th of the current month, and the clinics will be from 1:30 to 4:30 P.M.

"3. For the orgnization of your work you will consult with the Head of the Public Health Unit of Ponce, under whose orders you will serve in these clinics."

On · September 8, 1933, the petitioner answered thus:

"Re: Additional Service.

"1. In answer to the letter which I have just received, in which I am ordered to hold five weekly clinics in the Public Health Unit of Ponce, under the orders of Dr. Montalvo Guenard, I am pleased to advise you of my spirit of cooperation in everything which may benefit public health works and the plan of reorganization which is being carried out in that Department.

"2. On February 20, 1931, the same question was raised and I now take the liberty of sending you a copy of my letter at that time, together with the approval which my plan merited from Dr. Osvaldo Goyco, Director of the District Hospital of Ponce.

"3. In practice, this same work is now being done in the services of this Hospital. The cases of the prenatal clinics, and those directly recommended by the Office of the Public Health Unit, are reexamined and attended by me in the Maternity Department which is in my charge. In the District Hospital we also have a Pediatrics Department in which I attend the patients directly. Moreover, I do this work with patients who come to the Hospital with recommendations for consultation from the various municipalities served by this Institution. You may obtain proof of these services in any way you please, and I take the liberty to add that my reasons of February 20/31 for preferring the clinics within the hospital are now reinforced by

personal circumstances with Dr. Montalvo Guenard, whose demonstration of antagonism and enmity have been manifest for some time.

"4. I am awaiting your reply, and in order that it may be more prompt I am certifying this letter, in order that it may reach you before the 11th of the current month, the day fixed by you for beginning the clinics in the Public Health Unit, and in order that you may not construe my non-appearance at the clinics as an act of insubordination toward the Department.

"5. Once you know the reasons stated, I trust that you will advise me whether it is possible for you to modify your opinion regarding the organization of the said work."

The respondent insisted on September 15, 1933, as follows:

"Re: Clinic Service.

"1. After having studied your plan for attending the Prenatal and Child Hygiene clinics in the District Hospital rather than in the Public Health Unit, as you were ordered to do by this office, and after consulting the Director of Public Health Units of this Department, Dr. George C. Payne, I regret to inform you that I cannot accede to your desire to do this work in the District Hospital, since this would be contrary to the policy which the Department follows throughout the Island in respect to the operation of these clinics.

"2. For this reason we insist that this work be done under the direction of the Head of the Public Health Unit of that municipality."

The petitioner came to San Juan for the purpose of obtaining a personal interview with the respondent, without success, and upon her return to Ponce on September 25, 1933, she addressed him the following night letter:

"Sir: Considering unjustified conditions superposed office tocologist district hospital Ponce an imposition which according interview Assistant-Commissioner Malaret due political exigencies, personal dignity forces me to resign office which I always held cooperating intensely social medical problems community served. Was confident guarantees Civil Service Act in force were effective. In accordance with that act I request 30 days leave of absence. Will resign office immediately upon expiration said leave. Thank you. Dr. Pérez Marchand."

The respondent answered on October 1, 1933, as follows:

"1. I acknowledge receipt of your telegram dated September 25, 1933, in which you tender your resignation as tocologist of the District Hospital of Ponce and request a leave of absence of one month, alleging therefor reasons of a political nature.

"2. In relation to this matter I wish to inform you that on September 6, 1933, I addressed you a letter assigning to you additional work in the Public Health Unit of Ponce, with the object of improving the efficiency of the service in relation to the work which you do for this Department.

"3. On September 8, this office received your letter requesting that you be relieved of this work in the Unit in order to do it in the District Hospital of Ponce, and I advised you in my letter of September 15 that it was impossible to accede to your desire since it was contrary to the policy followed by this Department in regard to the operation of prenatal clinics.

"4. In spite of my letter of September 15, you did not comply with the order of this Department, and on September 25 you sent a telegram the contents of which seem very strange to me since there has been nothing except a disobedience on your part of the orders issued by the undersigned in the furtherance of the service.

"5. In order to be able to consider your request for leave of abcense and your resignation, it is necessary that you do so in a letter in proper form, since the undersigned Commissioner has had and wishes to have every consideration for you in spite of the fact that you have disregarded an administrative order."

On October 3, 1933, the petitioner wrote to the respondent, and the latter answered, on October 7, 1933, thus:

"Re: Administrative Order. 1. Referring to your letter of the 3rd instant, I wish to advise you that the only purpose which this office had in assigning to you additional work in the Public Health Unit of Ponce, according to a letter addressed to you on September 6 of this year, was to improve the efficiency of the service. This office has not been otherwise motivated in this matter. 2. It being absolutely necessary to begin the service of the clinics for prenatal care and for children, which you were ordered to render in the Public Health Unit of Ponce under the orders of Dr. A. Montalvo Guenard, you are hereby granted up to the 10th of this instant October to comply with the orders to that effect which you received from this office, according to the said letter of September 6, 1933."

To this answer the petitioner replied by telegram, on October 9, as follows:

"Respectfully state reasons heretofore presented to you witness my purpose to cooperate orderly with public health. Your letter October 7 delivered today October 9 ordering me to give additional service to Health Unit Clinics October 10 compels me to resort Civil Service Commission and Medical Association to make preliminary determination scope Civil Service Act in force which says 'No assignment involving a substantial change of duties may be made without approval Commission.' Improper reply my correspondence stating reasons conflict leads me to withdraw previous resignation according Rule 43 of Act in force, not yet considered. Your attitude re-assigning to me duties not within my office Tocologist Ponce District Hospital and creating conflict in organized service confirms report Assistant Commissioner Malaret political pressure only reason to single me out. The law will decide where reasoning fails."

On October 11, 1933, the Director of the Public Health Unit of Ponce, Dr. Montalvo Guenard, wrote to the respondent Commissioner of Health as follows:

"Re: Administrative order of the Hon. Commissioner. 1. In compliance with your letter of October 7, 1933, to Dr. Dolores Pérez Marchand regarding the duties assigned to her in this Public Health Unit of attending the clinics for prenatal care and for children under the direction of the undersigned, I wish to inform you that up to the present date, October 11, 1933, the distinguished colleague above mentioned has not reported to this office nor has she honored us with any excuse whatever to justify her absence."

On October 13, 1933, the Chairman of the Civil Service Commission, Mr. Hilera, answered a letter from the respondent Commissioner as follows:

"In answer to your letter of the 13th instant, requesting authority to assign certain additional duties to the office held by Dr. Dolores Pérez Marchand, I wish to inform you that the case was submitted to the Commission, which decided unanimously that, in accordance with official records, and in particular with Form P.C. 101, that is, the questionnaire filled out for the purposes of classifying the office, the additional duties in Clinics for children and prenatal care in the Public Health Unit of Ponce, which you have assigned to said phy-

sician, does not constitute a substantial change, within the purview of Rule XXXVII of the Civil Service, in the duties Tocologist of the District Hospital of Ponce, the office held by Doctor Pérez Marchand, and is an assignment of work in harmony with the duties and specialty of the said office, for which the Commissioner of Health has administrative power."

And on the same date the Attorney General of Puerto Rico advised the said respondent Commissioner of his opinion, to the same effect as that of Civil Service Commission.

On October 14 the Chairman of the Civil Service Commission, Mr. Hilera, answered a letter from the petitioner as follows:

"Referring to your letter of the 10th instant, and to the documents attached thereto, you are hereby informed that after submission of the case to the Commission and in view of the said documents and the official records of this body, and particularly of Form P. C. 101, that is the questionnaire filled out for the purposes of classifying your office, the Commission considers that the work in the clinics for children and prenatal care assigned to you by the Commissioner of Health is analagous to that included in your duties as Tocologist of the District Hospital of Ponce; and therefore it has decided that said work does not constitute a substantial change, within the purview of Rule XXXVII of the Civil Service, in your duties as Tocologist of the District Hospital of Ponce.

"As your hours of work in the said hospital are from 8 to 11 o'clock in the morning and from 2 to 4 in the afternoon, as also appears form P. C. 101, and since the said clinical work takes up the time from 1:30 to 4:30 in the afternoon, the additional time which you must devote to the said clinics will be only one hour a day, that is, five hours a week."

On October 25, 1933, a letter from the respondent dated October 14, 1933, was delivered to the petitioner. It reads thus:

"Re: Suspension without pay.

"In accordance with subdivision 2 of section 28 of Act No. 88, "To create the Puerto Rico Civil Service Commission and outline its duties and functions, etc.,' approved May 11, 1931, you are hereby

suspended from office without pay and are granted three days, counted from the date on which you receive this letter, to set forth in writing the allegations which you may wish to make in relation to the following charges:

"INSUBORDINATION AND FAILURE TO COMPLY WITH ORDERS. On September 6 the undersigned Commissioner of Health ordered you to hold five weekly clinics in the Public Health Unit of Ponce, three for children and two for prenatal care, and up to the present date, in spite of the fact that 33 days have elapsed since the date on which said order was to become effective, you have failed to comply with the said order, and on the contrary, have obstructed, by your hostile attitude, the reorganization plans which are being carried out in this Department to adjust its services to the public needs.

"On September 25 of the present year, you sent the undersigned Commissioner of Health a disrespectful telegram in which you characterized the additional work assigned to you in the Public Heath Unit of Ponce, in harmony with the duties and specialty of your position as Tocologist of the District Hospital of Ponce, as unjustified imposition.

"On October 9, 1933, you addressed to the undersigned Commissioner the following telegram which, because of its violent terms and of its contents, constitutes an act of open insubordination, particularly in regard to resorting to the Medical Association to raise questions which are purely administrative and within the powers of the Commissioner of Health:" (Here follows the text of the telegram of October 9 above transcribed).

On October 26, 1933, the petitioner, through her counsel, applied to the respondent and the Chairman of the Civil Service Commission, for an extension to November 3, 1933, to answer the charges and obtained from the President of the Commission the following reply:

"Charges Dr. Pérez Marchand have not been filed this Commission. We have no jurisdiction matter."

On October 28, 1933, the petitioner answered the respondent as follows:

"Re: Attempted suspension without pay.

"1. The Tocologist of the District Hospital of Ponce appears assisted by her undersigned attorney, and in reference to the supposed charges preferred against her by the Hon. Commissioner of

Health of which she was notified on October 25, 1933, and to which an answer was required in the short term of three days, hereby states as follows:

"2. That in accordance with the very subdivision 2 of section 28 of Act No. 88, relating to the Classified Civil Service, passed by our Legislature in 1931, a provision on which it is sought to base the alleged charges, the Hon. Commissioner of Health has failed to comply with: (a) the requisite of fixing, within the term specified in the said statutory provision, the duration of the alleged suspension; and (b) the requisite of immediately informing the Civil Service Commission of the said suspension, for the purposes provided by law.

"3. That the Hon. Commissioner of Health likewise failed to observe the provisions of the third paragraph of section 28 of the said Civil Service Act of 1931, to the effect that before an appointing officer can suspend a subordinate, he must file with the Civil Service Commission, in writing, the reasons for the suspension, which has not been done in this case, according to a communication received from the said Commission.

"4. That the Hon. Commissioner of Health, in decreeing the attemped suspension, has not acted in accordance with Rule XLI of the Regulations promulgated for the proper enforcement of the Civil Service Act of Puerto Rico of 1931, in that he did not stipulate the duration of the suspension either in the notice of suspension, or in the supposed charges preferred, and in that he failed to "forthwith send a copy of such notice to the Civil Service Commission."

"5. That the undersigned Tocologist holds an office or employment within the Classified Civil Service, for which reason, in accordance with the Act and the Regulations approved for the purpose, she cannot be removed or suspended, except in the manner provided by the said Act and Regulations, which has not been done, as has already been shown.

"6. That in addition to what has already been stated, the undersigned Tocologist emphatically denies that she has in any way been guilty of supposed insubordination, disrespect, or failure to fulfill her duty; and, on the contrary, she reiterates her assertions and offers of cooperation and good will toward the Department of Health of Puerto Rico in the manner shown in the correspondence had with that Department.

"7. By virtue of all the foregoing, the undersigned Tocologist considers the alleged order of suspension illegal and nonexistent,

considering herself within and bound to continue, as she proposes to do, fulfilling the duties which pertain to and are inherent in her office as Tocologist of the District Hospital of Ponce."

On the same day, October 28, 1933, the respondent Commissioner addressed a communication to the Chairman of the Civil Service Commission in the following terms:

"On October 14, 1933, the undersigned Commissioner of Health preferred charges for insubordination and disregard of order, of which a copy is enclosed, against Dr. Dolores Pérez Marchand, Tocologist of the District Hospital of Ponce. These charges were sent to Dr. Osvaldo Goyco, Director of said Hospital, with orders that they be pressed in case Dr. Pérez Marchand should insist in her attitude of not complying my orders to attend certain clinics relating to her specialty in the Public Healh Unit of Ponce.

"On October 19, Dr. Goyco sent to this Department a request of Dr. Pérez Marchand for leave of absence of 60 days, with her promise to resign at the end of said leave.

"As charges were pending action, this office did not accede to the leave with promise to resign requested by Dr. Pérez Marchand, and ordered Dr. Goyco, by telephone, to present the charges, which were sent by certified mail on October 21 and received on October 24. According to a letter from Dr. Goyco held by his office, they were delivered on October 25, to Dr. Pérez Marchand.

"This office has been awaiting official notice of the delivery to Dr. Pérez Marchand of the charges preferred in order to send to your Commission, as a matter of record, a copy of the same, which we do by means of the present communication."

On November 14, 1933, the defendant finally removed the petitioner from her office, and informed her of her removal as follows:

"Re: Removal.

"Your reply to the charges preferred on October 14, 1933, received by you on October 25, is not satisfactory. You are therefore definitely removed from the office of Tocologist of the District Hospital of Ponce, beginning on October 25 of the current year, the date on which the suspension from office and pay decreed against you became effective."

On November 17, 1933, the attorney for the petitioner addressed a letter to the Chairman of the Civil Service Commission which reads as follows:

"Doctor D. Pérez Marchand, whose office as Tocologist of the District Hospital of Ponce was pending an attempted order of suspension decreed by the Commissioner of Health, which she intended to prove illegal before your Hon. Commission, and in spite of the foregoing, received yesterday, November 16, 1933, a notice of her definite removal by the Commissioner of Health, to be effective retroactively, from October 25, 1933.

"Since, according to the first paragraph of section 28 of the Civil Service Act, such an order of removal should have been made after the preferment and filing of specific charges before the commission and after hearing the Doctor, we hereby request that your Hon. Commission certify whether or not the said charges for the supposed removal were filed with the Commission prior to October 25, 1933, the date from which the Department of Health has given retroactive effect to the said removal."

And she received the following reply:

"As to the other points of the said letter and of the subsequent letter of the 17th of the same month, you are hereby informed that this Commission has not acted in this case because it involves a summary removal effected by the appointing officer, in accordance with the third paragraph of section 28 of the Civil Service Act in force and with Rule XLII of the Civil Service."

It seems advisable to transcribe also the documents on which the petitioner based her allegation that her removal was for political reasons. They read as follows:

"San Juan, P. R., August 21, 1933,—To the Heads of Public Health Units and to the Heads of Local Health Offices:—Esteemed fellow-member of the party: The party has done me the honor of naming me collector for this Department.

"The purpose of fixing a quota of 2% of the salary which you receive as an employee of this Department is to pay the debt which the party contracted during the last campaign, which ended in a triumph so brilliant that it put us in control of all the departments of the Government.

"We expect that you will contribute with the quota assigned monthly until the total of the debt shall have been paid and funds

acquired for the next election campaign which, although it should be easy for us, you know that great expenses are always incurred, and it is well to be prepared on this point.

"The cooperation which you give to our party will be fully appreciated. We await your reply. Respectfully, (Sgd.) José Cantellops.

"(There is an envelope attached to the above letter which says: Government of Puerto Rico—Department of Health, P. R.—Dr. Lola Pérez Marchand, District Hospital, Ponce, P. R.)"

"August 30, 1933.—Mr. José Cantellops, Department of Health, San Juan, P. R.—Sir: In reply to your circular letter of the 21st of the current month, in which you solicit of me a political contribution, in the form of a quota for the Union Republican Party, equivalent to 2% of the monthly salary which I earn for my services as Tocologist of the District Hospital of Ponce, I beg to state the following objections:

"Complying with the Civil Service Act which governs my relations and obligations as a specialized professional, it has been my unswerving norm to abstain from participation in political propaganda of any sort and I do not belong, nor am I at present interested in belonging, to any of the parties of the island.

"As a matter of self respect and respect for other people, I confine myself to the duties of my post, and I consider that the highest guaranty of my specialty will always be that I remain free from all party affiliation.

"Believe me that in refusing to contribute with a part of my salary, it is my purpose to insist that I do not owe my office to political pledges, and that I consider myself protected by the Civil Service Act in proceeding in this manner.

"I am confident that you will properly interpret my attitude to the political authorities, and trusting that my reasons are in accord with the superior orders of the Commissioner, I beg to remain, sincerely (Sgd.) Doctor Pérez Marchand, Tocologist of the Dist. Hosp. of Ponce."

"August 30, 1933.

"From: Tocologist of the District Hospital of Ponce.

"To: Hon. Commissioner of Health of Puerto Rico, Dr. Eduardo Garrido Morales.

"Re: Protest against political quota.

"Sir: On this same date I have sent an original letter to Mr. José Cantellops, in his capacity as Official Collector of the Majority Party in this Department, who has written me requesting the pay-

ment of a monthly quota, that is, a part of my salary, as a contribution to a certain reserve fund for political purposes.

"I take the liberty of attaching for your information and guidance, a copy of my answer to the said political collector of the Department of Health, and I trust that my conduct will merit your approval. —Respectfully, Dr. D. Pérez Marchand, Tocologist, Dist. Hosp., Ponce."

These being the facts, did the trial court commit the errors assigned by the appellant or did it act properly in refusing to try the case on the merits, and in simply denying the petition because the administrative remedy had not been exhausted?

▇ The law governing the case is contained in section 28 of the Civil Service Act of Puerto Rico (Laws of 1931, p. 556, Act No. 88), which provides:

"Section 23.—*Removals.*—No person holding an officer or place in the classified service, shall be removed or discharged except for just cause, upon written charges, and after an opportunity to be heard in his own defense. Such charges may be filed by any superior officer or any citizen, and shall, within thirty days after filing, be heard, investigated and determined by the Commission or by some person or board appointed by the Commission to hear, investigate and determine the same.

"Nothing herein contained shall limit the power of any superior officer to suspend a subordinate for a reasonable period not exceeding thirty days, pending hearing and decision. Every such suspension shall be immediately reported to the Commission and shall be without pay; *Provided, however,* That the Commission shall have authority to investigate every such suspension and in case of its disapproval, it shall have power to restore pay to the employee so suspended.

"Nothing herein contained shall limit the power of any appointing officer to suspend or dismiss a subordinate for any cause which will promote the efficiency of the service, upon filing with the Commission written reasons for such action and giving the person whose removal is sought reasonable notice of the same and of any charges preferred against him, and an opportunity to answer the same in writing, and to file with the Commission such proper evidence as he may deem necessary in his defense. All papers filed in the case shall be public records. The decision of the Commission may, within the thirty days

following service of notice thereof on the prejudiced party, be reviewed by the District Court of San Juan upon an application for review on which the District Court may consider all the issues of fact and of law brought up therein, judgment to be rendered by said court within the thirty days following the hearing of the case. Said judgment shall be final. The Commission may reinstate an officer or employee so removed only in case it appears after a proper hearing that the removal was made for political or religious reasons.''

The first paragraph of the section establishes the general rule to be followed.

The second paragraph refers to suspensions from employment decreed by a ''superior officer.'' It expressly provides that nothing in the first paragraph contained shall limit the power of any superior officer to suspend a subordinate for a reasonable period not exceeding thirty days, and directs that the suspension be immediately reported to the Civil Service Commission which shall have authority to investigate it and to order the restoration of pay in case of its disapproval.

The third paragraph deals with suspensions and removals of subordinates, for just cause, by an ''appointing officer.''

Here the first thing done was the suspension. It was decreed by the ''appointing officer'' on October 14, 1933, but the subordinate was not notified until October 25. The commission was notified on October 28 in the manner which we have seen.

The question of the suspension is not decisive in this case. The decisive question is that of the removal decreed on November 14 by the respondent Commissioner, on the ground that the answer of the petitioner to the charges preferred at the time of the suspension was not satisfactory.

Did the respondent Commissioner have the power to act as he did?

The answer to that question requires a careful examination of the third or last—and most obscure—paragraph of the section.

It begins by providing expressly that the general rule fixed in the first paragraph does not limit the "power of any appointing officer to suspend or dismiss a subordinate for any just cause which will promote the efficiency of the service." If it ended here, there would be no difficulty, but after a comma it continues thus: "upon filing with the Commission written reasons for such action and giving the person whose removal is sought reasonable notice of the same and of any charges preferred against him, and an opportunity to answer the same in writing, and to file with the Commission such proper evidence as he may deem necessary in his defense," and then the difficulty arises.

Should it be understood that the lawmaker directed that the dismissal cannot be decreed until the charges are filed with the commission and the employee or officer against whom they are made is given an opportunity to appear before it? That construction finds support in the form in which the paragraph is drafted, but if it were adopted it would destroy the power of the appointing officer which is recognized at the beginning, and which has always been acknowledged, subject, of course, to the limitations upon its exercise which are required by justice. The appointing officer would be limited to the preferment of charges. It would be the commission which would have the power to remove after investigating them.

What the paragraph under consideration goes on to provide as to the procedure and review of the decision of the commission by the courts, does not help much in determining the exact intent of the Legislature. The final provision, to wit: "The Commission may reinstate an officer or employee so removed only in case it appears after a proper hearing that the removal was made for political or religious reasons," gives the key, in our opinion, to the final decision of the problem, because reinstatement cannot exist without removal, and because the lawmaker himself speaks of the

employee or officer removed, that is, already removed when the commission begins to act.

Thus the logical construction, the one which gives life to every provision contained in the act and which conforms to the precedents and the adjudicated cases, is that which recognizes the power of the appointing officer to remove for just cause, which implies the preferment of charges and an opportunity to defend before the officer himself, the record being sent to the Civil Service Commission which keeps a record of all of the employees and officers of the Island and before which the employee or officer removed has a new opportunity to defend himself and obtain his reinstatement in case the removal was due to political or religious reasons.

The theory of the petitioner is that the respondent alone could not remove her. In our opinion he could, according to the construction we have just given to the statute.

█ If the respondent Commissioner had acted in an arbitrary manner in exercising his power, without preferring charges or giving an opportunity to answer them, we would agree that mandamus would lie without the necessity of awaiting the action of the commission, but in our view the trial court did not err in finding that here charges were preferred and an opportunity for answering them was given to the petitioner, who actually did answer them in writing. It makes no difference that the matter began with the suspension and that the second instead of the third paragraph of section 28 of the Civil Service Act was erroneously referred to. The suspension was a preliminary step which could and did lead to the removal. The law was substantially complied with.

█ Now then, as the motive alleged as the true cause of the removal is political, the case is one of those in which the commission has power to reinstate the officer removed if the merits of the case demand it, and the district court therefore acted properly in deciding that the administrative remedy had not been exhausted. That remedy is still open

to the petitioner. She may discuss her case within it. The action of the courts will come later, if it should be necessary.

The appeal must be dismissed and the judgment appealed from affirmed.

MR. JUSTICE WOLF, dissenting.

I do not find myself definitely in a position to differ from the majority opinion when it says that the Civil Service Commission can only order the reinstatement of an employee when the latter was removed for political or religious reasons. Nevertheless, inasmuch as each one of the district judges of San Juan in independent cases have held to the contrary, I feel bound to have some doubts. Reading all of section 28 and other parts of the act, it seems to me that a court might readily find that it was the original idea of the Legislature that the Civil Service Commission should have the power of reinstating to his job a person who was removed therefrom; that the final paragraph was an afterthought; that given the main idea it should not affect the case more than it is absolutely necessary to give effect to the words of the Legislature. That is to say, that I follow the judges of the district court in the idea that the general intention of the act was to give ample powers to the commission.

Accepting the decision of the majority, it would follow that the final four lines of section 28 prevent the commission from giving an order of reinstatement which would be absolutely legally binding, only in cases where an employee has been removed for religious or political reasons. Given these premises, I shall attempt to give the reasons for my dissent.

I think the petitioner in this case was entitled to be restored to her position. When the head of the department says to a person ''I hereby remove you from your job'' with or without reasons, the necessary consequence is that the employee can not perform his or her work, or at least such a person is physically out of office for the time being. So

far as the executive chief is capable of doing so, the employee is removed from office.

In various cases, *Belaval* v. *Todd*, 24 P.R.R. 24, *Gil* v. *Chardón*, 41 P.R.R. 208, and *Jiménez* v. *Reily*, 30 P.R.R. 582, this court, following innumerable precedents, decided that the words "just cause" mean, as interpreted traditionally, that before removal the employee whose separation is sought, must be given a notice and opportunity to defend. Now I maintain, and this is the crux of my position, that what the Civil Service Act has done has been to transfer from the executive head the right to hear the charges. I maintain that in Puerto Rico today the body that has a right ordinarily to hear and decide the charges is the Civil Service Commission. "Just cause" in Puerto Rico now, in my opinion, involves the notice to the employee and an opportunity to defend, not before the execution head, but before the Civil Service Commission. The executive head is stripped, it seems to me, of all power to try the charges.

If the question be asked what would be the effect of a decision of the commission holding that the charges were unjustified, my answer would be that I do not necessarily need to answer the question specifically, but so far as it lies in my power I would say that a decision of the commission is perhaps like a declaratory judgment, perhaps like a reference to a commissioner or other person or like the well-known work of a *"contador partidor."* None of the acts thus performed become necessarily executive until some court acts upon them.

Following up the considerations immediately foregoing, I maintain that, under the present state of the law in Puerto Rico, no person may be in legal effect permanently removed from office by an executive head until the charges that he makes against an employee have been heard and decided by the commission or by a court. There is then no such thing remaining in Puerto Rico as a trial by the official head. What

happens when an official head acts as was done in this case is in effect that the person is, in my opinion, physically removed from office but that the right to the office remains. We are all very familiar in the civil law with actual possession and the right to possession. It may be said that the employee has been deprived of the possession of the office, but has not lost his title, and hence that he may revendicate in some form or other, although the Civil Service Commission can not restore the employee to his position. I can not agree with the majority opinion that the act preserves in the executive head a right to hear and determine.

Furthermore, if the commission makes a finding that the charges are not well founded, the executive head might ordinarily feel bound to reinstate the person to his or her job. However, under the act itself if he was not satisfied with the decision he could have the matter reviewed by the district court. I am not at this juncture attempting to explore the resulting powers of the said court.

Under these circumstances, I feel bound to dissent.